1  SUSAN ELLEN FASSLER

2  REGISTER NUMBER: 11334-046

3  FCI-II VICTORVILLE SATELLITE CAMP

4  PO BOX 5300

5  ADELANTO CA 92301

6  PRO SE

7

8  ## UNITED STATES DISTRICT COURT

9  DISTRICT OF MONTANA

10

11

12  SUSAN ELLEN FASSLER          §   CASE NO.: CR-11-52-GF-SEH-04

13  Petitioner,                  §   MOTION FOR

14  v.                           §   COMPASSIONATE RELEASE
                                 §   UNDER THE FIRST STEP ACT
15  UNITED STATES OF AMERICA,    §
                                 §   [Expedited Treatment Requested]
16  Respondent.                  §
                                 §   HON. Sam E. Haddon
17                               §
18                               §

19

20

21              **I. SUMMARY**

22  Susan Ellen Fassler ("Petitioner"), pro se, seeks an order for reduction of

23  sentence based on the expansion of Compassionate Release after passage of the

24  First Step Act ("FSA"). This request is based on serious medical condition

25  pending surgery, the rapid spread of Covid-19 in CA, changes under

26  §3553(a) factors, and other reasons as described herein. Petitioner has a solid

27  release plan including a stable residence, financial support, and family to

28  ///

1

aid in her re-entry.  Petitioner is a non-violent offender who poses no risk or danger to the public.  Her current projected release date is in December 2025. Petitioner has a number of serious medical issues caused by a life-threatening protruding cerebeller tonsil through the foramen magum (a mass at the base of her skull).  She needs surgery and follow-up care not available at the Camp.  This request was encouraged by the BOP doctor in charge of Petitioner's care.  The seriousness of her condition and the spread of Covid-19 warrant expedited treatment.

## II.  POINTS AND AUTHORITIES

### A.  Relevant Procedural History

Petitioner was indicted in 2011.  She was convicted after a prompt guilty plea and sentenced to 180 months for nonviolent drug offenses in November 2011.  After an MRI in August 2019 revealed a mass at the base of her skull requiring neurosurgery, Petitioner was told to request compassionate release.  She did so on January 2, 2020.

Petitioner has served 106 months in prison -- the equivalent of nearly a 10+ year sentence when factoring in good time.  She has recently received written notice from the Federal Bureau of Prisons ("BOP") of her designation as "Low"        risk for recidivism under the Risk Assessment Tool implemented under the FSA and is eligible for time credits.  To date, no time credits have been calculated by the BOP although under the Act they should have begun accruing on the date of passage.

### B.  Statement of Jurisdiction

Petitioner has exhausted requirements for reduction of sentence under the Compassionate Release statute by request to the Warden at FCC Victorville on January 6, 2020.  The request was forwarded to a social worker and no decision has been received. Under the FSA, a defendant may, for

the first time, petition a district court for compassionate release. §603(b), 132 Stat. at 5239, "Increasing the Use and Transparency of Compassionate Release." This court now has authority to act on its own to reduce sentences for "extraordinary and compelling reasons" even in the face of resistance or delay by the BOP.

**C. Legislative History and the Interplay of Parole, §3582, and the First Step Act of 2018.**

**Federal Parole and 18 U.S.C. §3582(c).**

The federal parole system in the United States was in place for over 70 years before it was abolished by The Comprehensive Crime Control Act of 1984 ("CCCA"). The prior system of parole was a variation of imprisonment with the purpose to help an individual reintegrate into society as a constructive individual as soon as she is able without being confined. See Morrissey v. Brewer, 408 U.S. 471, 484 (1972). Concurrent with the abolishment of parole was the creation of the U.S. Sentencing Commission and the directive to establish a system of guidelines. (S. Rep. No 98-225 at 52,53 n. 74 (1983)) As part of the CCCA and in tandem with the abolishment of parole, 18 U.S.C. §3582 was enacted. The intention was for district courts to be able to reduce sentences for prisoners based on extraordinary and compelling reasons including medical, elderly, or family circumstances and to provide judicial discretion for relief when appropriate. Congress intended for the situations listed in §3582(c) to act as "safety valves for modification of sentences" that enabled sentence reductions when justified by various factors that previously could have been addressed through the parole system. Id. at 121. The Senate Committee stressed how some individual cases may still warrant a second look at resentencing: The Committee believes that there may be unusual cases in which an eventual reduction in length of a term of imprisonment is justified by changed circumstances. These would include cases

3

1  of severe illness, cases in which other extraordinary and compelling circumstances
2  justify a reduction of an unusually long sentence, and in some cases in which the
3  sentencing guidelines for the offense of which the defendant was convicted have
4  been later amended to provide a shorter term of imprisonment. Id. at 55-56.

**The First Step Act.**

Congress passed the First Step Act in 2018 with overwhelming bipartisan
support to promote rehabilitation of prisoners and unwind decades of mass
incarceration. Cong. Research Serv., R45558, The First Step Act of 2018: An
Overview 1 (2019); First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.
The statute amends numerous portions of the U.S. Code. The FSA authorizes
early release of federal prisoners who have worked to reform themselves and are
deemed low risk. Importantly, the FSA incorporated changes to a poorly managed
compassionate release system in order to expand its use. Leading up to the much-
needed reforms, The Office of the Inspector General found the BOP (previously
the only agency that could file a compassionate release motion with the court),
"does not properly manage the compassionate release program, resulting in
inmates who may be eligible candidates for release not being considered." FBOP
Compassionate Release Program, at I iv.; see generally Stephen R. Sady & Lynn
Deffebach, Second Look Resentencing Under 18 U.S.C. §3582(c)(1)(A).

**Expansion of Compassionate Release.**

Congress has unequivocally said it wishes to "[i]ncreas[e] the [u]se...of
[c]ompassionate [r]elease" by allowing district courts to grant petitions. 18 USC
§3582(c)(1)(A).       Through the FSA, Congress changed the process of
Compassionate Release.    The BOP's mismanagement and overly stringent
interpretations of the law were the subjects of a hearing leading to the introduction
of a stand-alone bill in Congress entitled "Granting Release and Compassion

Effectively" Act of 2018, S. 2471, 115th Cong. (2018). This bill explicitly sought to "improve the Compassionate Release process of the BOP." Id. The intent of this bill was incorporated into the final version of the FSA which amended 18 USC §3582. §603 of the FSA amended §3582(c)(1)(A) to permit defendants to move a sentencing court for modification of sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf **or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]**" (emphasis added)  The court...may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in §3553(a) to the extent that they are applicable, if it finds that (i) extraordinary and compelling reasons warrant such a reduction;...and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]  Id.

**U.S. Sentencing Commission Policy Statement.**

Authority was originally delegated by Congress to the U.S. Sentencing Commission to promulgate a list of "extraordinary and compelling" reasons under the statute. §3582(c)(1)(A). It failed to act until 2007. The Commission's policy statement, adopted before the FSA, requires both "extraordinary and compelling reasons" and that "the defendant is not a danger to the safety of any other person or to the community as provided in 18 U.S.C. §3142(g)." U.S.S.G. §1B1.13. Congress never defined "extraordinary or compelling" other than to state "[r]ehabilitation of the defendant *alone* is insufficient."  28 U.S.C. §994(t) (emphasis added). However, the Commission implies that rehabilitation may be considered with other factors. See §1B1.13 cmt. n. 3.

5

1    Before the passage of the FSA, the Commission identified four scenarios.
2    The first two deal with medical, elderly, and health reasons; the third with family
3    circumstances.    In the final category, the Commission provided a catch-all
4    provision allowing the BOP Director to determine "there exists in the defendant's
5    case an extraordinary and compelling reason other than, or in combination with,
6    the reasons described in subdivisions (A) through (C)."   §1B1.13 cmt. n. 1(D).
7    Extraordinary reasons "need not have been unforeseen at the time of sentencing."
8    §1B1.13 cmt. n. 2.

9        Under U.S.S.G. §1B1.13 and the accompanying Application Notes,
10   a defendant suffering from a serious medical condition that sub-
11   stantially diminishes the ability of defendant to provide self-
12   care within the environment of a correctional facility and from
13   which she is not expected to recover.   See §1B1.13(A)(ii)(I).

14       While courts have found the Commission Policy Statement
15   provides helpful guidance on the factors that support compassionate
16   release, it is not ultimately conclusive given statutory changes.
17   See e.g. United States v. Fox, 2019 US Dist. LEXIS 115388 (D. Me.
18   July 11, 2019)

19   Petitioner's Request to the Warden

20       On January 6, 2020, Petitioner made her request to the Warden.
21   She mailed her only copy to her prior attorney but has requested
22   a copy and will submit it to this court immediately upon receipt
23   as a supplemental exhibit.   On January 28, 2020, Warden Pliler
24   responded to Petitioner's Request noting it had been forwarded
25   to  the social worker for further review.   Petitioner has not
26   received  any further updates or response.   This court's interven-
27   tion  is necessary in the face of the BOP's delay.   The warden's
28   response reflects the initial request received on January 9, 2020.
                                                    (See Ex. A)

1   **The FSA Operates as Federal Parole.**

2       In a Senate Judiciary Committee hearing November 19, 2019, BOP Director

3   Kathleen Hawk Sawyer indicated that there is "no real difference" between the

4   FSA and parole.  Under the FSA, time credits for pre-release custody of 15 days

5   per 30 days are available to inmates who are minimum risk of recidivism and are

6   not subject to an ineligible offense.  This 2/3-time credit ratio (i.e. serve 30 days

7   (2/3), get 15 days (1/3) credit toward parole or pre-release custody) was applicable

8   under federal parole and pre-release custody functions in a comparable manner.

9   While the language and logistics have changed, the fundamental intent has not.

10  The function of the FSA was to create a parole-like solution to mass-incarceration

11  and promote rehabilitation and early re-entry.  Under this analysis  too,

12  Petitioner should be considered for a reduction in sentence.

13      **D.  Argument**

14      Petitioner qualifies for a reduction in sentence under the statutes which

15  replaced parole and which the FSA contemplated.  District courts now have wide

16  latitude to consider what reasons justify compassionate release.  See United States

17  v. Brown, 2019 U.S. Dist. LEXIS 175424 (S.D. Iowa, Oct. 8, 2019)("[T]he only

18  way direct motions to district courts would increase the use of compassionate

19  release is to allow district court judges to consider the vast variety of

20  circumstances that may constitute "extraordinary and compelling.").

21      Petitioner submitted her request to the warden of the Federal Prison Camp at

22  FCC Victorville on January 6, 2020, more than 30 days ago.  (See Ex. A)

23  Under the statute, there is no requirement to seek administrative remedies under

24  18 U.S.C. §3282(c)(1)(a).  See United States v. Morgan, 2019 U.S. Dist. 53769

25  (Dist. of Nevada, March 29, 2019) (granting compassionate release where

26  administrative remedy exhaustion was not required after denial by warden within

27  30 days).

28

**Petitioner's Medical Condition Warrants Compassionate Release**

As reflected in an MRI August 1, 2019, Petitioner has a life-threatening protruding cerebeller tonsil through her foamen magnum. This is a mass with the potential to herniate and impact the spinal cord. She suffers from severe pain and debilitating headaches, balance disturbance, dizziness, visual disturbance, coordination disturbance, neck and lower back pain, and numbness of hands and arms. She is on convalescence and unable to work and perform day-to-day tasks. Diminishing motor skills and increasing pain levels make even walking difficult at times and medical (Dr. Peikar) has recommended the use of a walker.

At the time of diagnosis and a determination that neurosurgery would be required, Petitioner was told by Dr. Peikar that the institution did not have a contract with a hospital with a neuro-surgeon. Since then, a surgeon has been located but there has been months of delay in the meantime during which Petitioner's suffering has become worse.

After surgery, Petitioner will require care. The Camp does not have staff or the medical facilities to properly monitor and care for Petitioner post-operation. Petitioner was told by Dr. Peikar, the sole doctor at the camp, that he would draft a letter indicating the limitations and problems with performing the surgery on Petitioner and then not having resources for follow up care. He urged Petitioner to make the request for compassionate release and said he would support it.

The camp at FCC Victorville does not have a daily sick-call. Dr. Peikar has the impossible job of being the sole doctor for the Camp and three additional higher-security men's

///

8

institutions.  Chronic care is not adequately managed and a doctor
is nearly impossible to see absent an emergency.

   Courts across the country have granted compassionate release for
age and health related reasons.  See, e.g. United States v. Bellamy,
2019 U.S. Dist. LEXIS 124219 (D. Minn. July 25, 2019)(finding that
inmate's "health is seriously deteriorating because of the aging
process and that his ability to function in a prison facility is
substantially diminished as a result"); United States v. Johns, 2019
U.S. Dist. LEXIS 107850,(D. Ariz. June 27, 2019)(holding that inmate
"is on the cusp of or is suffering from a serious physical or medical
condition and is experiencing deteriorating physical or mental health
because of the aging process that substantially diminishes hisability
to provide self-care within the BOP and from which  he is not expect-
ed to recover"); United States v. McGraw, 2019 U.S. Dist. LEXIS
78370 (S.D. Ind. May 9, 2019)(granting compassionate release to 72
year-old inmate with limited mobility, diabetes, kidney disease,
Hepatitis C, and other issues).

   The coronavirus creates additional concerns.  Petitioner lives
in a warehouse-style dorm with more than 150 other women.  She does
not have the ability for social-distancing or self-quarantine. The
B.O.P. has not had any inmates test positive for Covid-19 but this
is meaningless because not a single inmate has been tested.  Staff
screening only began on March 17, 2020 and inmates with symptoms
have been turned away from medical.  There is no hand-sanitizer,
requests by inmates for masks were denied at a "town hall" on March
13, 2020, and the B.O.P. is admittedly illequipped to handle this
pandemic.  The Campaign for Compassionate Release makes recommendat-
ions for timely responses to compassionate release requests in cases
elderly, medical and other extraordinary circumstances.

1    **Extraordinary and Compelling Circumstances.**

2        Extraordinary simply means uncommon or unusual. The word has been
3    used interchangeably with "exceptional". "Exceptional" does not mean "extreme"
4    or "novel", but simply "infrequent" or "uncommon". See United States v.
5    DiSomma 951 F. 2d at 497 (2d Cir. 1991) (discussing a non-exclusive list of
6    exceptional reasons in the context of bail pending appeal). Courts have
7    determined that §3582(c) did not define or place any limits on what
8    "extraordinary or compelling reasons" might warrant a reduction. Id. Cantu
9    (citing Crowe v. United States, 430 F. App'x 484, 485 (6th Cir. 2011)). The court
10   in Cantu also relied on the Rule of Lenity, which in this situation mandates that
11   "when two rational readings of a statute are possible, the one that treats the
12   defendant less harshly prevails." Id. Cantu (citing McNally v. United States, 483
13   U.S. 350, 359-60 (1987)).

14

15   **§3553(a) Factors.**

16       The court should consider post-offense developments under §3553(a), in
17   order to take into account the "most up-to-date picture" of the defendant's history
18   and characteristics. See United States v. Walker, 2019 U.S. Dist. LEXIS 180084
19   (N.D. Ohio, Oct. 17, 2019); U.S.S.G. §1B1.13 App. Note 3. Congress has just
20   begun to rein in past excesses leading to mass incarceration as indicated in the title
21   of the FSA. The FSA demonstrates a recognition that many sentences handed out
22   were not just "sufficient," but far "greater than necessary." A pre-FSA sentence
23   may be "greater than necessary" when considered in light of new qualifying
24   "extraordinary and compelling" circumstances. United States v. Spears, 2019 US
25   Dist. LEXIS 177991, 2019 WL 5190877 at *5; United States v. Gray, 2019 U.S.
26   Dist. LEXIS 160593, 2019 WL 4572816, at *5 (S.D. Indiana, Sept. 20, 2019);
27   United States v. Wong Chi Fai, No. 93-cr-1340 (RJD), 2019 U.S. Dist. LEXIS
28   126774, 2019 WL 3429504, at *4 (E.D.N.Y. July 30, 2019). The 3553(a) factors

1  applicable to Petitioner and her conviction have changed since she was sentenced

2  and justify immediate release.

3      The nature and circumstances of the offense and history of the defendant

4  warrant a second look due to post-sentencing changes.  See §3553(a)(1).

5      The need for the sentence imposed and every benefit of a lengthy sentence

6  has been satisfied.  See 3553(a)(2).    Spending years in prison is a significant

7  sanction as punishment reflecting the seriousness of Petitioner's crimes.  The time

8  already served has provided for both general and specific deterrence.  See United

9  States v. Gray, 2019 U.S. Dist. LEXIS 160593, 2019 WL 4572816, at *5 (citing

10  §3553(a)(2) and (6)).

11      Petitioner is 50 years old.  She has spent over 8 years in

12  prison.  She has consistently programmed and  maintained camp

13   status.                          She has served nearly 60% of her sentence

14  and is "low risk" under the risk assessment created pursuant to

15  the FSA.  Petitioner's housing at a camp without walls or fences

16  and when minimum security risk and low recidivism  are considered

17  together, Petitioner is not a risk or danger if released.

18

19  **Pre-Release Custody Credits Under the FSA.**

20      Under the FSA, pre-release custody time-credits are granted only on a

21  prospective basis.  As such, the years of programming completed by Petitioner

22  will not result in the time-credits which she would be eligible for had she began

23  her sentence today.  However, while the FSA clearly states that time-credits begin

24  to accrue upon passage of the Act, the BOP has failed to implement the Act in this

25  regard and the credits that should have begun accruing over a year ago have not

26  been issued.  No programming plan has been suggested for Petitioner and no re-

27  entry or rehabilitation needs remain.  The BOP has yet to complete its needs

28  assessment tool.  (BOP Director Sawyer testimony, S. Judiciary Committee,

11/19/19).   Director Sawyer indicated this could be because the BOP is undermanned.   Id.   The Hill has suggested a more problematic reason being elements within the DOJ trying to undermine the Act essentially rooted in a punitive culture that is difficult to change.   When a federal agency has been granted authority and responsibility under the law and has refused, through either nonfeasance or malfeasance to follow the law, the court is empowered to fashion an alternative remedy to effectuate the goal that Congress sought to achieve.   In the civil context, "[t]he essence of equity jurisdiction is the power of the court to fashion a remedy depending on the necessities of the particular case."   Sierra Forest, 577 F. 3d at 1022 (citing United States v. Odessa Union Warehouse Co-op, 833 F. 2d 172, 175 (9th Cir. 1987).   Nothing about Congress's decision to pass prospective only time-credits prevents this court from fashioning an alternative reduction that accomplishes the same purpose Congress intended.   Petitioner has worked hard to learn from her mistakes and put her education and skill set to good use throughout her incarceration.   Like the defendant in Urkevich, the FSA changed the law in beneficial ways that have a prospective benefit but where defendants like Petitioner have been short-changed in that they will not receive the benefit a newly sentenced defendant will.   She is caught in limbo and at the mercy of a government agency who moves at a glacial pace and whose punitive culture is contrary to Congressional objectives.   This has resulted in an unfair delay of relief to eligible defendants across various criteria specified in the FSA.

**Solid Release Plan**.

If Petitioner is released, Petitioner will live with her parents in Brideg, MT.   She is eligible for social security and health insurance.   Her family is prepared to support her until she can recover and go back to work.   She will obtain medical care in her community and be cared for at home after surgery.

### III. CONCLUSION

For each of the foregoing reasons, Petitioner seeks an order from this court amending judgment in this case to time served. As a pro se defendant incarcerated and without the benefit of formal training, she seeks the application of the liberal construction doctrine afforded by Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L Ed 652 (1972). Petitioner prays this court will exercise the compassion the law contemplates and release her to the care of her family to face a risky surgery and lengthy recovery.

Respectfully submitted this 26 day of March , 2020.


Susan Ellen Fassler
#11334-046

Petitioner, pro se

13

1

## CERTIFICATE OF SERVICE

2

3  I hereby certify that on ___March 14_____, 2020, a true and correct

4  copy of Petitioner's Motion for Compassionate Release was placed in the

5  institutional mail drop at FCC Victorville with sufficient postage affixed for

6  delivery by first class mail to:

7

8

9  United States District Court
   Clerk of the Court
10 Missouri River Courthouse

11 _125 Central Avenue West_____

12 _Great Falls, MT  59404_____

13

14

U.S. Attorney's Office

901 Front St, Ste 1100

_Helena, MT  59626_____

_____

15

16  Dated this 26 day of _March_____, 2020.

17

18  _Susan Ellen Fassler_____

19

20  Susan Ellen Fassler

21  Petitioner, pro se

    #11334-046
22  Federal Prison Camp
    POBOX 5300
23  Adleanto, CA  92301

24

25

26

27

28

14

# EXHIBIT A



**COPY**

Name:  FASSLER, SUSAN ELLEN
Register No.: 11334-046
Unit: G-S

---

This is in response to your Inmate Request to Staff received in
this office on January 9, 2020.  In your request, you would like
the Warden to consider you for a Compassionate Release.

You have requested Compassionate Release based on what you
believe is due to a serious medical condition, and have provided
your unit team with a release plan.  Therefore, your request
will be forwarded to the Social Worker for further review.  The
Social Worker will inform you of the status of this request.

I trust this response addresses your concerns.


W.S. Pliler, Warden                          Date